```
             UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
                   WESTERN DIVISION
```

WILLIS PATRICK,                :   NO. 1:10-CV-00045
                               :
     Plaintiff,                :
                               :   **OPINION AND ORDER**
     v.                        :
                               :
FERGUSON ENTERPRISES, INC.     :
                               :
     Defendant.                :

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 13), Plaintiff's Response in Opposition (doc. 20), and Defendant's Reply (doc. 25).  The Court held a hearing in this matter on January 18, 2011.  For the reasons indicated herein, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion such that it DISMISSES Plaintiff's claim for age discrimination, while Plaintiff's claim for retaliation survives.

**I. Background**

Defendant Ferguson Enterprises, Inc., a company that sells underground water and sewer parts and products, hired Plaintiff to work as a truck driver/delivery man, in March 2006, when Plaintiff[1] was 56 years old (doc. 13).  Defendant hired Plaintiff to work in its Fairfield, Ohio branch, a "satellite" branch staffed with a total of eight, including two in Plaintiff's position (Id.).

---

[1] Plaintiff was born in September 1951.

Although Plaintiff contends he never had any attitude or discipline problems during the course of his employment (doc. 20), Defendant contends that when Plaintiff's supervisor Mark Touhey ("Touhey"), 28 years old, evaluated Plaintiff in 2007, Touhey expressed "concern about Patrick's attitude" (doc. 13). According to Defendant, Plaintiff regularly stated all he wanted to do was "drive a truck," and indicated in a self-evaluation that a "broom does not fit well" in his hands (Id.). Nonetheless, Defendant continued to employ Plaintiff, and regularly granted him overtime.

The basic dispute in this case arose in October 2008. According to Defendant, the economic downturn caused it to direct all of its branches to reduce overtime (doc. 13). Mark Touhey indicated to the employees at the Fairfield facility that the goal was to "manage overtime hours to zero" (Id.). Such change in policy affected both Plaintiff and his fellow truck driver, Albert "Butch" Nichols[2], who was 49 years old (Id.).

Plaintiff felt that Nichols, whom he characterizes as "substantially younger," received more opportunities for training and equipment, and after October 2008, Nichols received more opportunities for overtime (doc. 20). Plaintiff expressed such concerns to Touhey in late October 2008 (Id.). These concerns are the crux of the dispute in this case.

Defendant proffers evidence that its records show that

---

[2]Nichols was born in September 1959.

during the last eight months of his employment, Plaintiff actually received more overtime than Nichols (doc. 25).  It also states that because Plaintiff was involved in an accident in a company truck in October 2008, and took leave for more than a week, the fact that Nichols received more overtime in November 2008 is skewed by the fact of Plaintiff's absence (Id.).

On Friday, November 14, 2008, Plaintiff made a delivery that took longer than usual, and Touhey was concerned because Plaintiff did not call on his company cell phone to explain why. When the warehouse manager John Hacker ("Hacker"), 48 years old, tried to reach Plaintiff by cell phone, Hacker could not get through (doc. 13).  Hacker was concerned and alerted Touhey, who successfully reached Plaintiff on Plaintiff's cell phone (Id.). Plaintiff indicated there were problems unloading the truck at the delivery site, and Touhey asked Plaintiff to come talk to him once he returned (Id.).

When Plaintiff returned, he and Touhey had a discussion in which Touhey instructed Plaintiff to keep Hacker informed when there were delays (Id.).  Touhey further instructed Plaintiff that there were no more deliveries for that day, and so Plaintiff should clock out and go home (Id.).   According to Touhey, Plaintiff became defensive and objected that his fellow truck driver Butch Nichols was not being sent home (Id.).  Touhey responded that each employee's schedule is independent of the other's and that

Plaintiff needed to clock out (Id.). Plaintiff responded that Touhey should not "get mad when I file suit," stormed out, squealing his tires when leaving the parking lot (Id.).

About ten minutes later, Plaintiff called Touhey, and stated he wanted to talk with Mike Lombardo, Defendant's general manager for the region, who is based in Columbus, on Monday, about age discrimination (Id.). Plaintiff offered to drive the semi-truck to Columbus, which was customary as he was the only one licensed to do so, and the branch always made efforts to return the truck to Columbus as soon as possible (doc. 20). In the alternative, Plaintiff offered to take his own vehicle (Id.). According to Plaintiff, Touhey responded he would make an appointment with Lombardo, and he would let Plaintiff know on Monday what Plaintiff should drive (Id.).

After these exchanges on Friday, Touhey emailed Lombardo (doc. 25). In Plaintiff's view, the emails show that Touhey complained to Lombardo for the first time about Plaintiff on Friday that Plaintiff was allegedly notorious for "milking the clock," and that Plaintiff was uninterested in expanding his skills or helping out with office operations (doc. 20). Nonetheless, Plaintiff indicates Touhey could not name specific examples and did not document any (Id.). Lombardo responded to Touhey on Saturday November 15, emailing that Plaintiff's actions and behavior were way out of line, and indicated that over the weekend Lombardo and

4

Touhey should discuss "letting him go early next week" (Id.).

Defendant argues that at such time there was no intention to terminate Plaintiff's employment, but rather that Touhey and Lombardo agreed the last thing they wanted to do was to let somebody go, and that maybe heads would cool down over the weekend (doc. 25). Touhey and Lombardo agreed Touhey should prepare a "counseling confirmation" to discuss with Plaintiff Monday so as to get him on board with company policy (Id.). Touhey did indeed prepare such form, but as events ultimately unfolded, he did not manage to give it to Plaintiff (Id.).

When Monday morning came around, Touhey called Plaintiff into his office, to discuss Plaintiff's conduct the previous Friday and his concerns that Plaintiff needed to comply with company policy (doc. 25). Plaintiff referenced Touhey's alleged more favorable treatment of Nichols, to which Touhey allegedly responded Touhey could do anything he wanted to (doc. 20). Plaintiff responded that he intended to go to Columbus to file an age discrimination charge with Lombardo (Id.). Touhey responded that Plaintiff could not go to Columbus that day (Id.). Plaintiff responded that he was going to Columbus whether it was in his own vehicle and on his own time or not (doc. 25). According to Plaintiff, Touhey allegedly responded that he did not want Plaintiff filing anything and that he would terminate Plaintiff if Plaintiff went to Columbus (doc. 20). According to Defendant,

5

Touhey only indicated that if Plaintiff left the Fairfield branch immediately, during the shift, and without permission, Plaintiff would be subject to discipline (doc. 25). Plaintiff responded to Touhey that Touhey was "not man enough" to fire Plaintiff (doc. 20). Touhey then terminated Plaintiff (Id.).

Plaintiff proceeded to go to Columbus to ask Lombardo to reinstate his employment, expressed his views that he was being treated unfairly as to overtime, and expressed his concern that Touhey threatened to terminate his employment if he complained about discrimination (doc. 25). Lombardo instructed Plaintiff to contact Charlotte Murch, Defendant's employment practices representative (Id.). Murch ultimately informed Plaintiff that Touhey fired Plaintiff because of his attitude and that the termination stood (Id.).

Plaintiff filed his Complaint on January 25, 2010, alleging Defendant discriminated against him on the basis of age in violation of both federal and state law, 29 U.S.C. §§ 621 et seq., the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code § 4112 (doc. 1). Plaintiff further alleges that Defendant retaliated against him for his protected activity of complaining about age discrimination, in violation of O.R.C. § 4112 (Id.). Defendant contends there is no genuine dispute that it treated Plaintiff fairly, and that it was justified in terminating Plaintiff's employment for insubordination (doc. 13). Plaintiff

6

has responded, and Defendant has replied, such that this matter is ripe for the Court's consideration.

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of

7

informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere

8

existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,

9

369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Discussion**

    **A. Plaintiff's Age Discrimination Claim**

Ohio and federal law prohibit discrimination on the basis of age in employment decisions. O.R.C. § 4112.02(A), Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Under these provisions, Plaintiff may assert a prima facie case through the presentation of either direct or indirect evidence. Allen v. Ethicon, Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996). In many cases, evidence of direct discrimination can be difficult to produce, so the law allows for a plaintiff to raise an inference of discrimination through circumstantial evidence. McDonnell Douglas v. Green, 411 U.S. 792 (1973). In the case at hand, Plaintiff does not proffer direct evidence of age discrimination. Thus, the Court will focus upon circumstantial evidence in

evaluating Plaintiff's prima facie case.

In order to prevail on a circumstantial evidence theory, Plaintiff must establish a prima facie case of age discrimination by proving that (1) he was over forty, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee, he was treated differently than similarly-situated employees outside the protected class, or additional evidence shows that the employer was motivated by Plaintiff's age in making its decision. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). The fourth prong may be met where Plaintiff can show he was treated differently than someone "substantially younger," which in the Sixth Circuit means differences in age, at the very least, in excess of six years. Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003).

The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. Texas Dep't. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

In this case Defendant does not contest the first three

11

elements of the prima facie case.  However, Defendant argued at the hearing, and in its briefing, that Plaintiff cannot show he was treated differently than Nichols as to overtime, because the records for the last eight months of Plaintiff's employment show that Plaintiff actually received more overtime than Nichols. Defendant further offered evidence that deliveries were assigned according to a "first-in, first-out" system so that overtime would accrue in a neutral manner.  In response, Plaintiff contended that unlike Plaintiff, Nichols was never asked to leave early, and Nichols received more training than Plaintiff.  Defendant replied that Plaintiff made it clear he only wanted to drive a truck, and never showed interest in getting more training.

The Court finds no genuine dispute that Plaintiff actually received more overtime hours than his younger colleague, Nichols, so that despite Plaintiff's perception of unfair treatment with regard to overtime, such perception has no genuine basis in fact.  This is the crux of Plaintiff's age discrimination claim, and the Court finds no genuine material issue as to Plaintiff's claim that he received less training than Nichols.  As such, the Court finds Plaintiff has failed to proffer sufficient evidence that he was treated differently than Nichols.  Plaintiff's prima facie case for age discrimination therefore fails, and Defendant is entitled to summary judgment as to such claim.

12

### B. Retaliation

Regardless of the fact that Plaintiff has not established an age discrimination claim, he can still maintain a retaliation claim if he can create a genuine dispute of material fact as to whether he engaged in protected activity, complaining about age discrimination, and Defendant terminated him for having done so. Plaintiff contends he can show circumstantial evidence of retaliation, that is, 1) that he engaged in protected activity, 2) that the exercise of his civil rights was known to Defendant, 3) that he was subject to adverse employment action, and 4) that a causal link existed between the protected activity and the adverse action (doc. 20, citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987)).

The Court finds that Plaintiff's statements to Touhey on the Friday before he was fired, and Touhey's communications with Lombardo over the weekend, show that Defendant knew Plaintiff intended to raise questions regarding discrimination. Good faith opposition to discrimination is protected activity. Niswinder v. Cincinnati Insurance Co., 529 F.3d 714, 719-20 (6th Cir. 2008), Booker v. Brown & Williamson, 879 F.2d 1304, 1312-13 (6th Cir. 1989). A jury could find that Plaintiff's perception he was being treated unfairly by Touhey supported a good faith basis for a complaint. A jury might also accept Plaintiff's view that the normal practice of the company was for Plaintiff to return the

truck to Columbus, such that his expression to Touhey that he intended to go to Columbus on Monday to see Lombardo did not represent a work stoppage or interruption of his job duties. Finally, a jury might find a causal connection between Plaintiff's protected activity and his termination based on their temporal proximity. The Court concludes, therefore that Plaintiff has established a prima facie case of retaliation.[3]

Having so concluded, the burden shifts to Defendant to proffer a legitimate non-discriminatory reason for its termination decision. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Defendant here states its reason was Plaintiff's remark to Touhey that Touhey was "not man enough" to fire him. A reasonable jury might very well agree that such a statement could justify termination. However, if a jury would conclude that Defendant made the decision to terminate Plaintiff before Plaintiff made the statement, then it might conclude that the statement was not the real reason motivating the decision. A jury might conclude Lombardo and Touhey came to the decision about "letting [Plaintiff] go early next week" during the weekend, before the Monday morning confrontation. Should the jury so conclude, then Plaintiff could

---

[3] Plaintiff also contends he has direct evidence of retaliation based on Plaintiff's testimony that Touhey threatened to fire him if he went to Columbus to complain about discrimination. Although Touhey's testimony differs as to what he stated, should a jury find Plaintiff's testimony credible, it could conclude such a statement constitutes direct evidence of retaliation.

prevail on his claim for retaliation.

**IV. Conclusion**

Having reviewed this matter, the Court finds Plaintiff has failed to proffer sufficient evidence in support of his age discrimination claim. Regardless of his perception that Defendant gave him less overtime than Albert Nichols, the facts do not bear this out. However, the Court finds a jury might find in favor of Plaintiff on the theory that Defendant retaliated against him for engaging in protected activity, complaining about discrimination. This is a thin case, but one that nonetheless qualifies for consideration by a jury.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment (doc. 13), such that it DISMISSES Plaintiff's claim for age discrimination, while Plaintiff's claim for retaliation survives. The Court further SETS a final pretrial conference for 2:00 P.M. on March 29, 2011, and SCHEDULES the three-day jury trial to commence April 19, 2011, on an on-deck basis.

SO ORDERED.

Dated: February 2, 2011      /s/ S. Arthur Spiegel
                             S. Arthur Spiegel
                             United States Senior District Judge